FILED

2022 Jan-19  PM 12:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **RICHARD ALAN HEROD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 5:20-cv-1068-LCB** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| ***Acting Commissioner*** | ) | |
| ***of Social Security,***[1] | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION & ORDER

Richard Alan Herod appeals a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). (Doc. 1 at 1). He claims that the Commissioner's decision denying his application for Social Security benefits is not supported by substantial evidence. *Id.* at 2. As explained below,[2] the Commissioner's decision is supported by substantial evidence. The Court therefore affirms the decision.

## I.  STATUTORY FRAMEWORK & STANDARD OF REVIEW

The Social Security Act establishes who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). Under the Act,[3]

---

[1] Under Federal Rule of Civil Procedure 25(d), the Court substitutes Kilolo Kijakazi, the acting Commissioner of the Social Security Administration, for Andrew Saul, the former Commissioner.

[2] *See infra* Part III.

[3] Throughout this opinion, the Court cites to and applies the regulations in effect at the time of the ALJ's decision. *See Ashley v. Comm'r, Soc. Sec. Admin.*, 707 F. App'x 939, 944 n.6 (11th Cir.

an administrative law judge (ALJ) must evaluate an application for Social Security

benefits pursuant to a five-step inquiry:

> (1) Is the claimant engaged in substantial gainful activity?
> (2) Does the claimant have a severe impairment?
> (3) Does the claimant's impairment meet or medically equal a specific impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1?
> (4) Is the claimant able to perform former relevant work?
> (5) Is the claimant able to perform any other work within the national economy?

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[4] An ALJ reaches step 4 only if a

claimant is not engaged in substantial gainful activity (step 1), has a severe

impairment (step 2), and does not have an impairment that meets or medically equals

a listed impairment (step 3). *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir.

1986).

To evaluate whether a claimant is able to perform former relevant work

(step 4) and, if not, able to perform any other work within the national economy

(step 5), an ALJ must first determine the claimant's residual function capacity

(RFC). *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). A claimant's

RFC is defined as that which the claimant can still do despite his limitations.

20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). A claimant is disabled if he can perform

---

2017) (per curiam) (explaining that, when reviewing the Commissioner's final decisions, federal courts apply "the regulations in effect at the time of the ALJ's decision").

[4] A claimant bears the burden of proof through step four; the Commissioner bears the burden of proof at step five. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996).

neither former relevant work nor any other work within the national economy. *McDaniel*, 800 F.2d at 1030.

By contrast, a claimant is not disabled if he can perform former relevant work or any other work within the national economy. *Id.* Should an ALJ determine that a claimant is not disabled, the claimant may request review of the ALJ's decision before the Social Security Appeals Council. 20 C.F.R. § 404.1775(a). If the Appeals Council denies review, the ALJ's decision becomes a final administrative decision of the Commissioner. 20 C.F.R. § 404.1770(b)(1). A claimant may then seek judicial review of the Commissioner's decision in federal court under 42 U.S.C. § 405(g).

A federal court, however, is limited in its review of the Commissioner's final decisions. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). A reviewing court will not disturb the Commissioner's factual findings if they are supported by substantial evidence. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence is more than a scintilla, but less than a preponderance; it is that which a reasonable person would accept as adequate to support a conclusion. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam).

## II.   FACTUAL & PROCEDURAL HISTORY

Richard Alan Herod is a veteran with a history of degenerative joint disease and PTSD among other conditions. (Tr. at 118–19).[5] In February 2019, Herod applied for a period of disability, disability insurance benefits, and supplemental security income, alleging that he became unable to work in September 2018. *Id.* at 18, 192–94. The Commissioner denied Herod's applications at the administrative level. *Id.* at 128. In response, Herod requested further administrative review before an ALJ. *Id.* at 136.

In April 2020, after holding an evidentiary hearing on the matter, the ALJ issued a written order analyzing Herod's case in accordance with the five-step inquiry described above. *Id.* at 18–32. At step 1, the ALJ found that Herod had not engaged in substantial gainful activity since he allegedly became disabled in September 2018. *Id.* at 21. The ALJ then proceeded to step 2 and found that Herod suffers from four severe impairments: "carpal tunnel syndrome, degenerative disc disease, degenerative joint disease, and major depressive disorder[.]" *Id.*[6]

Accordingly, the ALJ proceeded to step 3 and considered whether Herod has an impairment or combination of impairments that meets or medically equals the

---

[5] "Tr" consists of a consecutively paginated record of the administrative proceedings below and spans from ECF Doc. 12-1 to ECF Doc. 12-9. For clarity and consistency with the parties' briefs, the Court cites to the consecutive pagination of the transcript instead of the ECF pagination.

[6] The ALJ also found that Herod suffers from the following non-severe impairments: "obesity, asthma, diabetes mellitus, essential hypertension, and hyperlipidemia[.]" (Tr. at 21).

severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 22–24. The ALJ, for instance, considered whether Herod's degenerative joint disease satisfied Listing 1.02 and whether Herod's "mental impairments" satisfied Listing 12.04. *Id.* at 22. Ultimately, the ALJ concluded that Herod satisfied neither Listing 1.02 nor Listing 12.04 based on the record evidence as a whole. *Id.* at 22–24.

Before proceeding to step 4, the ALJ determined Herod's RFC. *Id.* at 24. In doing so, the ALJ considered the medical record as a whole, including the medical opinions of half a dozen doctors. *Id.* at 25–30. First, the ALJ considered an assessment performed by Dr. Thomas Amason. *Id.* at 29. Dr. Amason opined that Herod could perform a range of light work despite his physical limitations. *Id.* at 120–23. The ALJ found that Dr. Amason's assessment was persuasive, noting that, although Dr. Amason had not treated Herod, he had reviewed the medical record. *Id.* at 29.

Second, the ALJ considered an assessment performed by Dr. Eugene Fleece. *Id.* Dr. Fleece reviewed the medical record and opined in part that Herod could perform a range of unskilled work. *Id.* at 123–25. Dr. Fleece, however, restricted Herod to missing one day of work per month due to his PTSD and receiving only simple, direct, and noninflammatory supervision. *Id.* at 124. The ALJ found that Dr. Fleece's specific restrictions were "speculative and unsupported by the objective

medical record," but otherwise concluded that Dr. Fleece's assessment was persuasive. *Id.* at 29.

Third, the ALJ considered an evaluation performed by Dr. Boyde Harrison. *Id.* Dr. Harrison noted that Herod "walked into the exam room without difficulty," but was "clearly over medicated[.]" *Id.* at 633–34. Dr. Harrison opined that Herod could return to the workplace if he titrated off high doses of opioids. *Id.* at 636. The ALJ found that Dr. Harrison's evaluation was unpersuasive because he examined Herod only one time and had no treating relationship with Herod. *Id.* at 29.

Fourth, the ALJ considered two examinations conducted by Dr. James Lindsey. *Id.* On both occasions, Dr. Lindsey noted that Herod had a slow, but normal gait and that he "walked in without assistance." *Id.* at 629, 733. Dr. Lindsey further noted that Herod had spontaneous speech, exhibited normal mannerisms, and maintained reasonable eye contact. *Id.* at 629–30, 733–34. Herod reported that he bathes and dresses himself (unless he is having a "bad day"), drives, prepares food, does housework, manages his finances, and socializes with his family daily. *Id.* at 630, 734.

Based on his observations and review of the medical record, Dr. Lindsey opined that Herod could understand, remember, and carry out instructions, and that he had no "relational issues" that would "interfere with his ability to maintain employment." *Id.* at 631, 735. Dr. Lindsey also noted that, although Herod alleged

that he was "receiving mental health treatment from the VA once a month," there were no mental health records in Herod's DDS file. *Id.* at 627, 731. The ALJ ultimately found that Dr. Lindsey's evaluations were persuasive, citing the fact that Dr. Lindsey had examined Herod and reviewed the record evidence. *Id.* at 29.

Fifth, the ALJ considered a letter from Dr. Brian Friloux. *Id.* In his letter, Dr. Friloux explained that he was Herod's "VA primary care physician" and that Herod had "sustained numerous injuries" while serving on active duty in the military. *Id.* at 324. Dr. Friloux then proceeded to describe the causes of these injuries and the injuries themselves in graphic detail. *Id.* He then opined that Herod, as a result of his injuries, was unable to stand or sit for a prolonged period of time, "unable to perform any meaningful work to provide for his family," and "100% disabled." *Id.*

Dr. Friloux, however, did not base his opinion on any record evidence. *Id.* Indeed, he admitted that he did not have access to Herod's active duty records. *Id.* Dr. Friloux instead cited Herod himself, explaining: "Herod is a good and reliable historian." *Id.* The ALJ, for her part, found that Dr. Friloux had no objective basis for his opinion and that the objective medical evidence did not support his opinion. *Id.* at 30. The ALJ therefore concluded that Dr. Friloux's letter was unpersuasive. *Id.*

Lastly, the ALJ considered a "Medical Source Opinion (Physical) form" submitted by Dr. Eston Norwood. *Id.* In the form, which consists mainly of checkmarks next to pre-written questions, Dr. Norwood opined that Herod was unable to "walk a block at a reasonable pace on rough or uneven surfaces," but that he did not "require the use of a cane to ambulate[.]" *Id.* at 743, 747. The ALJ found that Dr. Norwood's opinion was unpersuasive because he examined Herod on only one occasion and appeared to base his opinion primarily on Herod's subjective complaints "rather than clinical objective findings." *Id.* at 30.

Considering these medical opinions along with the relevant record evidence as a whole, the ALJ concluded that that Herod has an RFC to perform "light work"[7] with several physical and mental limitations. *Id.* at 24. The ALJ, for instance, noted that Herod could "understand, remember, and apply simple instructions and tasks. *Id.* But the ALJ limited Herod to "jobs involving infrequent and well explained workplace changes," and those requiring limited interaction with the general public. *Id.* (cleaned up). Additionally, the ALJ noted that Herod needed "the option to sit and stand during the workday for one to two minutes at a time while remaining on task[.]" *Id.*

---

[7] Under 20 C.F.R. §§ 404.1567(b), 416.967(b), light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." A job falls "in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

After determining Herod's RFC, the ALJ moved to step 4. *Id.* at 34. There, the ALJ determined that Herod is unable to perform any former relevant work. *Id.*[8] The ALJ then proceeded to the fifth and final step and considered whether Herod could perform any other work within the national economy. *Id.* at 31–32. Answering that question in the affirmative, the ALJ determined that Herod is able to work as an "inspector-hand packaging," a shipping/receiving weigher, or a laundry folder. *Id.* at 32. Accordingly, the ALJ concluded that Herod is not disabled for purposes of the Social Security Act and denied his applications for benefits. *Id.* After the Appeals Council denied his request for further administrative review,[9] Herod filed this suit under 42 U.S.C. § 405(g). (Doc. 1 at 1).

## III.   DISCUSSION

Herod claims that the ALJ's decision is not supported by substantial evidence. (Doc. 1 at 2). In support, he makes five overarching arguments: (1) substantial evidence does not support the ALJ's RFC determination; (2) the ALJ erroneously discounted the evidentiary weight of Dr. Friloux's medical opinion; (3) the ALJ erred by failing to consider whether his PTSD constitutes a severe impairment; (4) the ALJ erred by finding that he does not have an impairment that meets or medically equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1; and

---

[8] Specifically, the ALJ found that Herod is unable to return to his former occupation as a "heavy trucker driver." (Tr. at 31).

[9] (Tr. at 1).

(5) he is disabled under Medical Vocational Rule 201.14. (Doc. 14 at 4, 9–10, 13, 15, 17, 20). The Court addresses each argument in that order.

### A. Whether substantial evidence supports the ALJ's RFC determination.

Herod first argues that substantial evidence does not support the ALJ's RFC determination. (Doc. 14 at 4). When determining a claimant's RFC, an ALJ considers "the claimant's physical, mental, and other abilities" in light of his impairments. *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 808 (11th Cir. 2013) (per curiam). An ALJ must consider all "'relevant medical and other evidence' in the case" when making an RFC determination. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004) (quoting 20 C.F.R. § 404.1520(e)).

In this case, the ALJ determined Herod's RFC after thoroughly summarizing the medical record and considering the persuasiveness of each piece of relevant evidence, including the medical opinions of half a dozen doctors. (Tr. at 25–30). The ALJ ultimately concluded that Herod can perform light work with several physical and mental limitations, finding that the opinions of Dr. Amason, Dr. Fleece, and Dr. Lindsey were persuasive, and that the opinions of Dr. Harrison, Dr. Friloux, and Dr. Norwood were unpersuasive. *Id.* at 29–30. Having reviewed these medical opinions along with the record as whole, the Court concludes that substantial evidence supports the ALJ's RFC determination.

Herod provides no meaningful opposition to the contrary. The crux of Herod's argument is that that the ALJ misinterpreted certain portions of the medical record. (Doc. 14 at 4–9). This argument—at its core—asks the Court to reweigh the persuasiveness of the medical evidence, which the Court simply cannot do. *See Dolsak v. Comm'r of Soc. Sec.*, 724 F. App'x 914, 915 n.1 (11th Cir. 2018) (per curiam) ("[Claimant's] arguments that the ALJ did not consider the best evidence in the record amount to a request for us to reweigh the record evidence, which we cannot do."). Because substantial evidence supports the ALJ's RFC determination, Herod's argument fails.

### B. Whether the ALJ erroneously discounted Dr. Friloux's opinion.

Herod next argues that the ALJ erroneously discounted the evidentiary weight of Dr. Friloux's medical opinion. (Doc. 14 at 9–10). He reasons that the ALJ should have given Dr. Friloux's opinion controlling weight, or in the alternative, evaluated his opinion under 20 C.F.R. § 404.1527. *Id.* at 13. The problem for Herod is that § 404.1527 is inapplicable to his case.

Section 404.1527 applies only to claims filed before March 27, 2017. 20 C.F.R. § 404.1527. Under this regulation, there are three types "of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 765 (11th Cir. 2014) (per curiam). A treating physician is an acceptable

11

medical source who provides (or has provided) a claimant with medical treatment and has (or has had) an ongoing treatment relationship with the claimant. 20 C.F.R. § 404.1527(a)(2). An ALJ must assign "substantial or considerable weight" to a treating physician's opinion absent good cause to do otherwise. *Crawford*, 363 F.3d at 1159.

By contrast, Section 404.1520c governs claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c. Under this regulation, an ALJ does "not defer or give any specific evidentiary weight" to any medical opinion, including those of treating physicians. 20 C.F.R. § 404.1520c(a). Instead, an ALJ considers the opinion's "supportability" and "consistency" when evaluating the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(b)(2). Such persuasiveness is directly corelated with the extent to which the opinion supports its conclusions with objective evidence and explanations and the extent to which the opinion is consistent with other medical and nonmedical evidence in the record. 20 C.F.R. § 404.1520c(c)(1)–(2).

In this case, Herod applied for benefits on March 15, 2019. (Tr. at 192–94). As such, § 404.1520c applies to Herod's case—not § 404.1527. Correctly applying § 404.1520c, the ALJ found that Dr. Friloux's opinion was unpersuasive and unsupported by the medical record as a whole. *Id.* at 30. The ALJ did not defer or give any specific evidentiary weight to Dr. Friloux's medical opinion. *Id.* at 29–30. Accordingly, the ALJ properly considered Dr. Friloux's medical opinion under

§ 404.1520c. The ALJ therefore did not erroneously discount the evidentiary weight of Dr. Friloux's medical opinion.

## C.   Whether the ALJ erred by failing to identify Herod's PTSD as a severe impairment.

Herod next argues that the ALJ erred by failing to consider whether his PTSD constitutes a severe impairment at step two of the statutory inquiry. (Doc. 14 at 13). At step two, an ALJ must consider whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 916.920(a)(4)(ii).[10] The finding of any severe impairment satisfies this requirement. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). An ALJ need not identify "all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) (per curiam); *accord Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) (per curiam).

In this case, the ALJ found, at step two, that Herod has four severe impairments: carpal tunnel syndrome, degenerative disc disease, degenerative joint disease, and major depressive disorder. (Tr. at 21). Accordingly, the ALJ satisfied the requirement of step two without considering whether Herod's PTSD constitutes

---

[10] An impairment is not severe only if it "is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel*, 800 F.2d at 1031.

a severe impairment. Thus, the ALJ did not err by failing to consider whether Herod's PTSD constitutes a severe impairment.

> **D.      Whether the ALJ erred by finding that Herod does not meet a listed impairment.**

Herod next argues that he has an impairment that meets or medically equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. (Doc. 14 at 15). At step 3 of the inquiry, an ALJ must determine whether a claimant has an impairment that meets or medically equals the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). An ALJ, however, need not "mechanically recite" every listing she considers. *Flemming v. Comm'r of the Soc. Sec. Admin.*, 635 F. App'x 673, 676 (11th Cir. 2015) (per curiam). An "ALJ's finding as to whether a claimant does or does not meet a listed impairment need not be explicit and may be implied from the record." *Bellew v. Acting Com'r of Soc. Sec.*, 605 F. App'x 917, 920 (11th Cir. 2015) (per curiam).

Here, Herod maintains that his degenerative joint disease meets or medically equals Listing 1.02(A) and that his PTSD meets or medically equals Listing 12.15. (Doc. 14 at 15, 17). Herod does not contest the Commissioner's assertion that the ALJ implicitly found that Herod's PTSD did not satisfy Listing 12.15 when she found that Herod did not have an impairment that satisfies Listing 12.04. (Doc. 16 at 1–4). Because the ALJ found that Herod did not have an impairment that satisfies Listing 12.04, and because the requirements of Listing 12.04 and Listing 12.15 are

nearly identical,[11] the Court finds that the ALJ implicitly found that Herod did not have an impairment that satisfies Listing 12.15. The Court therefore proceeds by determining whether the ALJ's findings as to Listing 1.02(A) and Listing 12.15 are supported by substantial evidence.

### 1.    *Listing 1.02(A)*

Herod contends that his degenerative joint disease meets or medically equals Listing 1.02(A). (Doc. 14 at 15). Listing 1.02(A) requires dysfunction "of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively[.]" 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02(A). In this context, "[i]nability to ambulate effectively means an extreme limitation of the ability to walk," being unable to independently ambulate "without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.* at § 1.00(B)(2)(b).

Here, there is substantial record evidence that Herod can ambulate effectively without an assistive device. Dr. Harrison, for example, noted that Herod "walked into the exam room without difficulty." (Tr. at 634). Dr. Lindsey likewise noted that Herod had a slow, but normal gait and walked into the exam room without assistance. *Id.* at 629, 733. Additionally, Dr. Norwood opined that Herod did not

---

[11] *Compare* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04(B)–(C), *with* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.15(B)–(C).

"require the use of a cane to ambulate[.]" *Id.* at 743, 747. Additional examples abound,[12] but the point is clear: there is substantial evidence that Herod does not need an assistive device to ambulate effectively. The ALJ therefore did not err by concluding that Herod does not have an impairment that meets or medically equals Listing 1.02(A).

### 2.   *Listing 12.15*

Herod also contends that his PTSD meets or medically equals Listing 12.15. (Doc. 14 at 17). Listing 12.15 describes trauma-related and stressor-related disorders and requires:

A.   Medical documentation of all of the following:
1.   Exposure to actual or threatened death, serious injury, or violence;
2.   Subsequent involuntary re-experiencing of the traumatic event (for example, intrusive memories, dreams, or flashbacks);
3.   Avoidance of external reminders of the event;
4.   Disturbance in mood and behavior; and
5.   Increases in arousal and reactivity (for example, exaggerated startle response, sleep disturbance).

AND

B.   Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
1.   Understand, remember, or apply information.
2.   Interact with others.
3.   Concentrate, persist, or maintain pace.
4.   Adapt or manage oneself.

---

[12] VA medical records also repeatedly indicate that Herod does not need any assistive device to ambulate effectively. (Tr. at 370, 396–97, 503, 515, 522 529–530, 546, 572–73).

OR

C.  Your mental disorder in this listing category is "serious and
    persistent;" that is, you have a medically documented history of the
    existence of the disorder over a period of at least 2 years, and there
    is evidence of both:
    1.  Medical    treatment,    mental    health    therapy,
        psychosocial support(s), or a highly structured
        setting(s) that is ongoing and that diminishes the
        symptoms and signs of your mental disorder; and
    2.  Marginal adjustment, that is, you have minimal
        capacity to adapt to changes in your environment or to
        demands that are not already part of your daily life.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.15(B)–(C) (cleaned up). In this case, Herod

argues that he satisfies the criteria of Section A, Section B, and Section C. (Doc. 14

at 17–20). Because the record reflects that Herod satisfies the criteria of Section A,[13]

the Court turns to whether Herod satisfies the criteria of Section B or Section C.

### i.    Section B Criteria

Herod contends that he satisfies the criteria of Section B. (Doc. 14 at 18). To

satisfy Section B, a claimant must produce evidence that he has an "[e]xtreme

limitation of one, or marked limitation of two, of the following areas of mental

functioning: (1) understand, remember, or apply information; (2) interact with

others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.15(B) (cleaned up). Here, Herod argues that

---

[13] (Doc. 12 at 36–43, 484–89). The Commissioner has no opposition to this conclusion. (Doc. 15
at 22).

he has an extreme limitation on his ability to interact with others or, in the alternative, a marked limitation on his ability to interact with others and a marked limitation on his ability to adapt or manage himself. (Doc. 14 at 18–19).

Herod's initial argument fails. For purposes of Section B, "interacting with others" refers to the ability "to relate to and work with supervisors, co-workers, and the public." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(E)(2). A claimant has an extreme limitation on his ability to interact with others when he is unable "to function in this area independently, appropriately, effectively, and on a sustained basis." *Id.* at § 12.00(F)(2)(e).

In this case, Dr. Lindsey indicated that Herod had spontaneous speech, exhibited normal mannerisms, and maintained reasonable eye contact. (Tr. at 629–30, 733–34). She also noted that Herod managed "his finances" and socialized with his family daily. *Id.* at 630, 734. Considering Dr. Lindsey's records and the medical record as a whole, substantial evidence supports the ALJ's finding that Herod does not have an extreme limitation on his ability to interact with others.

Herod's alternative argument also fails. Under Section B, "adapt or manage oneself" refers to the ability "to regulate emotions, control behavior, and maintain well-being in a work setting." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(E)(4). A claimant has a "marked limitation" on his ability to manage himself when his ability

18

to function "in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." *Id.* at § 12.00(F)(2)(d).

In this case, Dr. Lindsey noted that Herod could bathe and dress himself without assistance unless he is having a "bad day." (Tr. at 630, 734). She noted that Herod could drive, prepare food, do housework, and manage his finances. *Id.* She opined that Herod had "overall average judgment when presented with everyday social or personal dilemmas." *Id.* Considering Dr. Lindsey's records and the medical record as a whole, substantial evidence supports the ALJ's finding that Herod does not have a marked limitation on his ability to adapt or manage himself. Consequently, substantial evidence also supports the ALJ's finding that Herod does not satisfy the criteria of Section B.

## ii.    *Section C Criteria*

Herod also contends that he satisfies the criteria of Section C. (Doc. 14 at 17–18). Section C requires a claimant to produce, in part, evidence of "[m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [the claimant's] mental disorder[.]" 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.15(C)(1). A claimant receives "ongoing medical treatment when the medical evidence establishes that [the claimant] obtain[s] medical treatment with a frequency

consistent with accepted medical practice for the type of treatment or evaluation required for [the claimant's] medical condition." *Id.* at § 12.15(G)(2)(b).

In this case, there is substantial record evidence that Herod had not received "ongoing medical treatment." Dr. Lindsey noted that, although Herod reported that he was "receiving mental health treatment from the VA once a month," there were no mental health records in Herod's DDS file. (Tr. at 627, 731). VA records also indicate that Herod was not seeing a psychiatrist in June 2019 and had not seen a psychiatrist in six years, although he had seen a "case worker" five times during the previous three months. *Id.* at 38. Considering these records and the medical record as a whole, substantial evidence supports the ALJ's finding that Herod had not received "ongoing medical treatment." Because substantial evidence supports the ALJ's conclusion that Herod did not satisfy Section C, the ALJ did not err by concluding that Herod does not have an impairment that meets or medically equals Listing 12.15.

**E.     Whether Herod is disabled under Medical Vocational Rule 201.14.**

Herod's final argument is that he is disabled under Medical Vocational Rule 201.14. (Doc. 14 at 20). Rule 201.14 applies only to claimants who have a maximum RFC of sedentary work. 20 C.F.R. pt. 404, subpt. P, app. 2, tbl.1.[14] As explained

---

[14] Under 20 C.F.R. §§ 404.1567(a), 416.967(a), sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."

above, the ALJ determined that Herod has an RFC to conduct "light work," and substantial evidence supports the ALJ's RFC determination. *See supra* Section III.A. Accordingly, Rule 201.14 is inapplicable to Herod's case. Herod therefore is not disabled under Rule 201.14.

## IV.   CONCLUSION

Herod fails to show error in the Commissioner's decision below. First, substantial evidence supports the ALJ's RFC determination. Second, the ALJ did not erroneously discount the evidentiary weight of Dr. Friloux's medical opinion. Third, the ALJ did not err by failing to consider whether Herod's PTSD constitutes a severe impairment. Fourth, the ALJ did not err by finding that Herod does not have an impairment that meets or medically equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. Finally, Herod is not disabled under Medical Vocational Rule 201.14. The Court therefore **AFFIRMS** the Commissioner's decision.

**DONE** and **ORDERED** January 19, 2022.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE